# Third District Court of Appeal

## State of Florida

Opinion filed October 19, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-208
Lower Tribunal No. 15-17241
_____

**American Airlines Federal Credit Union,**
Appellant,

vs.

**Carlos Hernan Fonseca, and Morgan Stanley Smith Barney, LLC,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, John W. Thornton, Jr., Judge.

Heckman Law Group, and Chad Heckman, (Tallahassee); Ausley & McMullen, and Martin B. Sipple (Tallahassee), for appellant.

Riley Warnock & Jacobson, and Timothy L. Warnock and Salvador M. Hernandez, (Nashville, Tennessee); Shumaker Loop & Kendrick, and Michael S. Taaffe and Scott A. La Porta, (Sarasota), for appellees.


Before WELLS, SHEPHERD and SALTER, JJ.

WELLS, Judge.

American Airlines Federal Credit Union ("AAFCU"), the plaintiff below, appeals from a non-final order compelling arbitration and staying proceedings in the court below. Because we find that the parties did not contract to arbitrate AAFCU's claims, we reverse and remand for further proceedings in the trial court.

In June 2008, AAFCU entered into an employment agreement with Carlos Fonseca. Under the 2008 agreement, AAFCU hired Fonseca as an investment representative to provide investment advice and to offer and sell securities and insurance products to AAFCU's members and joint account owners. Because AAFCU was not a member of the Financial Industry Regulatory Authority ("FINRA"), the 2008 agreement required Fonseca to become a "registered representative . . . of any broker/dealer . . . with which AAFCU may enter into a relationship concerning the provision of Investment or Insurance Services." The agreement also contained several restrictive covenants, including a provision governing use or disclosure of AAFCU's confidential information and a provision precluding Fonseca, for a period of 12 months following termination of his employment, either from "solicit[ing] or accept[ing] Investment or Insurance Services from any Client," or from encouraging any Client to transfer accounts away from AAFCU:

> **3.    COVENANTS TO PROTECT AAFCU'S CLIENTS, GOODWILL, EXPECTATIONS, TRAINING AND CONFIDENTIAL INFORMATION, INVESTMENT AND OTHER INTERESTS.**

2

Covenant One: Non-Use and Non-Disclosure of Confidential Information.  In exchange for AAFCU's agreement to provide Employee with Confidential Information and other consideration referenced in this Agreement, Employee agrees not to directly or indirectly disclose, divulge, reveal, report, publish, transfer or use, for any purpose whatsoever, any Confidential Information at any time during or after his/her Service with AAFCU, other than as required in the course of Employee's Service, and promises he/she will not allow any unauthorized use of Confidential Information. . . . .

. . . .

Covenant Five: Non-Solicitation/Acceptance of and Non-Interference with Business.  **Employee agrees that during and for twelve (12) months after his/her Service with AAFCU, other than for the benefit of AAFCU, he/she shall not directly or indirectly, whether on his/her own behalf and/or for the benefit of a third party (including but not limited to any consultant or consulting company) (a) solicit or accept Investment and Insurance Services business from any Client, or (b) solicit, encourage, induce or attempt to influence any Client to cancel, limit or postpone the Client's Investment and Insurance Services business with AAFCU, to transfer any of the Client's accounts away from AAFCU and/or to utilize Employee, directly, or indirectly, such Investment and Insurance Services.**

(Emphasis added).

This agreement contained no arbitration clause and expressly stated that the parties were free to "seek all available remedies at law or at equity for any breach." Significantly, the agreement provided it could not be modified absent a writing specifically referring to the 2008 agreement that was signed "by an officer of AAFCU."

3

Because AAFCU was not a member of FINRA, Fonseca, as contemplated by the 2008 agreement, entered into a separate, dual employment agreement with AAFCU's designated broker/dealer so that Fonseca could sell securities and insurance products to AAFCU clients.[1] This dual employment agreement contained an arbitration clause.[2]

With the 2008 employment agreement still in place, in May 2015, Fonseca resigned from his employment at AAFCU and accepted employment as a registered representative of Morgan Stanley. In August 2015, AAFCU filed the instant action against Fonseca and Morgan Stanley. Counts I through IV of the Amended Complaint alleged that Fonseca breached the above referenced covenants of the 2008 employment agreement by soliciting and accepting investment and insurance services from AAFCU clients within a year of his

---

[1] As contemplated by the 2008 employment agreement, Fonseca entered into a dual employment agreement with AAFCU's then designated broker/dealer, CUNA Brokerage Services, Inc. ("CUNA") for the provision of investment services at AAFCU as a registered representative of CUNA. When CUNA was replaced by PrimeVest Financial Services ("PrimeVest") in 2010, a second dual employment agreement was entered into so that Fonseca would continue to provide investment services at AAFCU as a registered representative of PrimeVest. In 2013, AAFCU and Fonseca agreed to an assignment of PrimeVest's rights under the 2010 dual employment agreement to yet another designated broker/dealer, Cetera Investment Services, LLC ("Cetera").

[2] This dual employment agreement, which set forth Fonseca's responsibilities and obligations as a registered representative of the broker/dealer, contained a provision providing that "[a]ny dispute between the parties shall be settled by arbitration before arbitrators sitting in St. Cloud Minnesota."

resignation; by inducing AAFCU clients to cancel their business with AAFCU and/or to transfer their accounts to Morgan Stanley within a year of his resignation; and by using AAFCU's clients' confidential information in order to facilitate the transfer of AAFCU client accounts to Morgan Stanley. Count VI alleged a claim for unjust enrichment against Fonseca. Count VII alleged tortious interference with AAFCU's business relationships against Fonseca. Count V against both Fonseca and Morgan Stanley alleged misappropriation of trade secrets. Thus, all counts of AAFCU's complaint were strictly within the purview of the non-compete provisions of the 2008 agreement.

In response to AAFCU's complaint, Fonseca and Morgan Stanley moved to compel arbitration, citing not to the 2008 employment agreement, but to the 2010 dual employment agreement that had been entered into with AAFCU's then designated broker/dealer. Following a hearing on the matter, the trial court adopted Fonseca's position finding that "[AAFCU's] claims fall within the scope of the arbitration provision" contained in the dual employment agreement and ordered that this matter proceed to arbitration.

We do not agree and reverse because the claims asserted here flow not from the 2010 dual employment agreement between Fonseca and now Cetera, but from the 2008 employment agreement between AAFCU and Fonseca which contains no arbitration provision. As this court confirmed in <u>All American Semiconducter,</u>

Inc. v. Unisys Corp., 637 So. 2d 59, 60 (Fla. 3d DCA 1994), the provisions of a second agreement between two parties, which requires arbitration, cannot be extended to a prior, separate agreement between the same parties, "unless the parties expressly agree to arbitrate" both agreements. In this case there is no express agreement to arbitrate disputes arising under both agreements. Thus, because the instant "complaint flows from a relationship and agreement outside the scope of the second and distinct agreement," no contract to arbitrate exists. See id.

Accordingly, we reverse the order compelling arbitration and staying this matter and remand for further proceedings in the court below.

Reversed and remanded.